(115 So. 855)

SCOTT v. STATE. (8 Div. 655.)

Court of Appeals of Alabama. March 20, 1928.

H. H. Hamilton, of Russellville, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

Brief did not reach the Reporter.

BRICKEN, P. J. ■ The conviction of this appellant rested solely upon the testimony of one Clarence Shewbart, a boy of about 20 years of age. The testimony of this witness was filled with uncertainties and contradictions. In numerous instances, when direct and leading questions were propounded to him on his direct examination by the solicitor, his replies were, "I reckon so." This witness was successfully impeached by an apparently disinterested witness, who testified that the state witness said in his presence that he knew nothing whatever against this defendant in this case. No effort was made to sustain the character of said witness before the jury. The state was permitted to show by the prosecuting witness what disposition he made of the quart of liquor alleged to have bought by him from this defendant by showing that he drank it. On cross-examination, the defendant should have been allowed to inquire as to whether or not he gave some of it to somebody else. The court erred in not allowing defendant to cross-examine the witness on this question. The elementary rules of evidence so provide.

■ The prosecution by the state in this case was predicated upon an alleged sale of a quart of whisky to the only state witness, and the issues should have been confined to that particular transaction. It was consequently error for the court, over objection and exception, to permit the solicitor to propound to defendant on cross-examination if he had not sold a good deal of liquor around there, and what did he do for a living while he lived out there at Belgreen, and, after defendant had answered that he worked in a shop and cut timber, etc., it was improper for the solicitor to state or ask, "Most of the time you sold liquor."

■■ On recall of state witness Clarence Shewbart, the following occurred, as shown by the record:

"Mr. Guin (solicitor): Q. Did you ever tell Scott that you were going to prosecute him to get out of your trouble, or words to that effect? Ans. No, sir.

"Q. Never told him anything like that? Ans. No, sir.

"Q. You say your mother came with you up to my office? Ans. Yes, sir.

"Q. Did she tell you to tell the truth? Ans. Yes, sir.

"Q. Did you tell the truth? Ans. Yes, sir.

"Q. Have you told it here this morning? Ans. Yes, sir.

"By Mr. Hamilton: Q. Did you tell the truth down there when you told Clyde Petree and Leonard Scott you didn't know anything about Scott. (State objected as to what he told.)"

■ While this court cannot put the court in error for permitting this character of improper questions and answers, as the matter is not here presented, yet we think that on the question of the motion for a new trial the court should have given this improper, illegal, and highly prejudicial line of inquiry some consideration, and when taken with other questions which arose upon the trial. What occurred in the solicitor's office between the mother of the witness and the solicitor and witness was res inter alios acta, the defendant not being present, and his case under no rule of law could be burdened by the adverse conversation of these parties not in his presence. Moreover, a witness may not be allowed to state, "I told the truth in giving my testimony in this case this morning." Whether he did or not is a question for the jury, and it is improper to thus allow a witness to bolster up his own testimony.

Reversed and remanded.